UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND PROCEDURES, INC.,

        Plaintiff,

v.                                      Case No. 06-C-833

EMISSIVE ENERGY CORP.,

        Defendant.

**DECISION AND ORDER**

Defendant Emissive Energy has filed a counterclaim against the plaintiff, Armament Systems and Procedures, as well as a third-party complaint against Dr. Kevin Parsons, Armament's principal. Parsons has moved to dismiss the third-party complaint on the grounds that Rule 14 impleader practice does not allow Parsons to be brought into this lawsuit. Fed. R. Civ. P. 14(a). Parsons also asserts that there is no case or controversy between himself and the defendant, and he further argues that one of Emissive's counts fails to state a claim for which relief may be granted. For the reasons given herein, Parsons' motion to dismiss will be granted in part and denied in part.

Looming over this action is the related series of earlier-filed cases consolidated under Case No. 00-C-1257. Following a bench trial and post-trial briefing, on July 24 I issued a decision concluding that Kevin Parsons had committed inequitable conduct when he submitted a falsely dated document to the Patent and Trademark Office. As such, United States Patent No. 6,190,018, the subject of the consolidated lawsuits, was found unenforceable. The present case involves three

other patents, all of which, Emissive asserts, are continuations of the '018 patent and rely on the enforceability of that patent.

**1. Parsons is a Proper Party to a Counterclaim Based on Inequitable Conduct**

Parsons' principal argument for dismissal is founded in Rule 14, which states:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

Fed. R. Civ. P. 14(a). In other words, impleader of a third party is allowed only for claims as to which the third party may be liable to the defendant for the *plaintiff*'s claim. Here, the plaintiff has alleged that Emissive infringed on its patents; obviously, Parsons (the plaintiff's owner) cannot be liable to Emissive for Emissive's infringement. *See Konica Minolta Business Solutions, U.S.A., Inc. v. Allied Office Products, Inc.,* 2006 WL 3827461, *5 (S.D. Ohio 2006) ("When defendants wish to assert a counterclaim against both the original plaintiff and a nonparty, the correct procedure is not a counterclaim and third-party complaint under Rule 14(a), but rather a counterclaim and a Rule 13(h) motion to join additional parties to a counterclaim.") (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1446 (2d ed.1990)).

Although the third-party complaint is improper under Rule 14 (which Emissive now concedes), Emissive argues that it could simply seek leave to amend its counterclaim and name Parsons. That is, rather than dismiss the complaint and stand on formalities, I could construe Emissive's filings as a Rule 13(h) motion to amend the counterclaim and add Parsons as a party. *See, e.g., Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.,* 2005 WL 433327, *13 (N.D. Ill. 2005) (treating defendant's improper third-party complaint as an action to join party to its counterclaim pursuant to Rules 13(h) and 20(a)).

2

The question therefore is whether Parsons may properly be joined as a counterclaim defendant. Rule 13(h) allows joinder of parties via a counterclaim or cross-claim if such party may otherwise be joined under Rule 19 (mandatory joinder) or Rule 20 (permissive joinder). Fed. R. Civ. P. 13(h). No one suggests that Parsons *must* be joined in this action in order to obtain complete relief, and so I do not consider joinder under Fed. R. Civ. P. 19(a). Rule 20(a) is broader:

> all persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a). Thus, the question is whether Emissive has any right to relief against Parsons that arises out of the same transaction or occurrence as its inequitable conduct counterclaims against Armament.

Parsons argues that there is no cause of action that involves him personally: the only controversy at issue is between Armament – the sole assignee of the patents in suit – and Emissive. Emissive's third-party complaint against Parsons seeks declaratory judgments that the three patents in suit are unenforceable due to inequitable conduct. Because such claims do not concern Parsons, he argues, he is not properly joined in the case. The only remaining claim is a state law claim for tortious interference, which should be dismissed either because there is no remaining federal dispute between the parties or because it fails to state a claim.

The question is when, if ever, it is appropriate to name an individual as a party to a declaratory judgment claim regarding a patent not owned by that individual. As Parsons notes, "inequitable conduct" is not a claim in its own right; it is a *defense* to the enforceability of a patent. While that may be true, a successful defense of inequitable conduct can involve the individual who

3

*committed* the inequitable conduct when it comes time to consider an award of attorney's fees under 35 U.S.C. § 285. This was precisely the scenario in *Nelson v. Adams USA, Inc.,* 529 U.S. 460 (2000), where Nelson, the inventor of the patent in suit and sole-owner of the plaintiff corporation, was found to have committed inequitable conduct before the PTO. The district judge allowed the defendant to amend its pleading to include Nelson personally because it appeared the corporation (the patent's owner) would not have sufficient funds to pay attorney's fees. The Supreme Court reversed on due process grounds, however, finding it was error to allow an amended pleading and judgment *after* judgment was entered because the amendment automatically rendered Nelson personally liable. That is, because Nelson had no chance to contest his own personal liability, the post-judgment amendment violated his right to due process: "Adams' motion [to amend] . . . sought more than permission to amend the pleading. It sought simultaneously an amended judgment, subjecting Nelson to liability as soon as he was made a party." *Id.* at 464.

Though the Supreme Court reversed, the reversal was on due process grounds rather than on the basis that Nelson was not a proper party to the case. Indeed, underlying the entire dispute was the unquestioned premise that Nelson, as the single shareholder of the corporation and the one whose behavior rendered the patent unenforceable in the first place, *could* be personally liable for a fee award under § 285 – it was just that the district court jumped the gun when it amended the pleading *and* the judgment at the same time, giving Nelson no opportunity to defend himself. This is confirmed by the portion of Federal Circuit's opinion that was not questioned by the Supreme Court:

> In this case, it is undisputed on appeal that Nelson personally committed the acts of inequitable conduct which were the basis for the fee award, and provided testimony regarding those acts as a witness at an evidentiary hearing. Moreover, as sole

4

> shareholder and president Nelson could control the litigation and indeed was found to have personally supervised it, including the inequitable conduct hearing.

*Ohio Cellular Products Corp. v. Adams USA, Inc.,* 175 F.3d 1343, 1348 (Fed. Cir. 1999). In so finding, the court also noted that the defendants "were not required to 'pierce the corporate veil' in order to add Nelson as a party." *Id.* at 1349, n.6. *See also, Field Hybrids, LLC v. Toyota Motor Corp.,* 2004 WL 2580747, *5 (D. Minn. 2004) (observing that the logic underlying the Federal Circuit's opinion in *Adams USA* is still viable despite Supreme Court reversal).

Apart from *Adams USA,* the Federal Circuit has allowed personal liability in the inequitable conduct context in other cases. In *Machinery Corp. of America v. Gullfiber AB,* for example, the court found that "an individual who acts as an agent of a patentee can be held liable for fees under Section 285 'if his conduct supports a finding that the case is exceptional.'" 774 F.2d 467, 475 (Fed. Cir.1985) (citing *Hughes v. Novi American, Inc.,* 724 F.2d 122 (Fed. Cir. 1984)). And in *Field Hybrids,* the district court denied the individual plaintiffs' motion to dismiss the defendants' counterclaims of inequitable conduct and attorney's fees under 35 U.S.C. § 285. 2004 WL 2580747, *5. The court found that the defendants had properly set forth a claim of inequitable conduct – a defense to the corporate plaintiff's infringement claim – and then named the individuals who actually committed that conduct in the claim for attorney's fees under § 285. *Id; see also D.O.C.C. Inc. v. Spintech Inc.*, 1994 WL 872025, *20 (S.D.N.Y. 1994) ("A corporate officer may be held personally liable for attorney fees under section 285 when the officer's active participation in tortious conduct results in a finding of patent unenforceability due to inequitable conduct and the filing or maintaining of a bad faith lawsuit.")

Thus, the mere fact that Parsons may not enforce the patents in suit in his own name does not mean he cannot be named as a party when the defendants raise inequitable conduct as a defense

5

to the enforceability of those patents. So long as he is given notice and a chance to defend himself, I conclude that Parsons is a proper party to a declaratory judgment action claiming the patents in suit are unenforceable due to Parsons' own inequitable conduct; in other words, the defendant's defense of unenforceability against Parsons and Armament arise out of the same transactions or occurrences, which means Parsons may be permissively joined under Rule 20, and thus named as a counterclaim defendant under Rule 13(h).

Having found that Parsons may be permissively joined, instead of dismissing the third-party complaint as improper and ordering a new pleading, it makes more sense to construe it as a counterclaim naming Parsons under Rule 13(h). As another district court noted in similar circumstances:

> The court will not dismiss Federal Realty's claim against Zurich merely because it used the wrong procedural mechanism for bringing Zurich into this action. The rules of procedure should be construed so as to promote judicial efficiency and avoid multiplicity of actions. *See* Fed.R.Civ.P. 1 (The rules of procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"). The court, therefore, shall construe Federal Realty's "third-party complaint" as the permissive joinder of Zurich as a defendant to the counterclaim against PMA pursuant to Rule 13(h), and deny Zurich's motion to dismiss. *See* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

*Pennsylvania Mfrs. Ass'n Ins. Co. v. Federal Realty Investment Trust,* 2000 WL 964771, *2 (D. Md. 2000); *see also, Comtel Technologies,* 2005 WL 433327 at *13.

**2. Emissive Fails to State a Claim for Tortious Interference with Economic Relationships**

The "third party complaint" also alleges that Parsons intentionally interfered with actual and prospective economic relations. Emissive's putative tortious interference claim is largely based on Parsons' inequitable conduct before the PTO; the complaint further asserts that Parsons knew the patents in suit were invalid and directed Armament's misconduct in the marketplace. Parsons

6

asserts that this claim must be dismissed because it fails to state a claim upon which relief may be granted because it does not specify any contractual relations that Parsons disturbed.

Under Wisconsin law, a tortious interference claim involves the following five elements:

> (1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere.

*Briesemeister v. Lehner,* 2006 WI App 140, 720 N.W.2d 531, 542 (Wis. Ct. App. 2006). At the outset, it is worth noting that an allegation of inequitable conduct before the PTO may form the basis of a state law tortious interference claim; in other words, federal law does not preempt state law claims based on the same conduct. *Dow Chemical Co. v. Exxon Corp.,* 139 F.3d 1470, 1476 (Fed. Cir. 1998) ("The instant case . . . concerns an allegation of bad faith enforcement of a reputedly unenforceable patent. . . . the tortfeasor here allegedly knew that its patent was unenforceable when it engaged in market misconduct.") Yet it is also clear that inequitable conduct before the PTO is not the *same* as tortious interference under state law – the state law claim must also assert that the tortfeasor's conduct extended to the marketplace:

> a tort claim for intentional interference with contractual relations requires elements entirely different to those required for inequitable conduct before the PTO. Thus, for example, it requires that the tortfeasor have knowledge of the contractual relationship with which he is interfering and that he commit an act of intentional inducement to harm that relationship. These required elements take place in the marketplace, not before the PTO.

*Id.,* 139 F.3d 1470, 1477 (Fed. Cir. 1998).

The parties here debate whether there is some sort of heightened pleading standard for tortious interference claims. Yet even under simple notice pleading, the claim asserted in Emissive's third-party complaint does not suffice to explain the nature of the alleged contractual

7

interference. (Third-Party Compl. ¶¶ 22-24; 47-50.) In particular, the Seventh Circuit (applying Wisconsin law) has emphasized the "need for some evidence that a contractual right was interfered with as a prerequisite for maintaining a tortious interference claim," *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 686 (7th Cir. 1999), yet Emissive's claim merely asserts that Parsons directed "unlawful activities" that interfered with Emissive's "actual and prospective economic relations." (Third-Party Compl. ¶ 48.) This is not enough: a bare assertion that Parsons disrupted Emissive's general business prospects does not state a claim. *Id.* at 689 ("mere economic or business relations with a third party was [not] sufficient to create a cause of action under Wisconsin law for tortious interference in the absence of an existing contract or sufficiently concrete prospective contract.")

Thus, I conclude that the tortious interference claim, as phrased in the third-party complaint against Kevin Parsons, should not be allowed to proceed. As it is stated, Emissive's claim for tortious interference would seemingly apply to *any* defense alleging inequitable conduct against a patentee suing for infringement, and the courts have made clear that a tortious interference claim is not a tack-on claim that merely echoes the inequitable conduct allegations: there must be some additional allegation that the patentee interfered with an existing or prospective contractual relationship. Because that assertion is absent here, the claim will be dismissed.

In sum, Parsons' motion to dismiss the third-party complaint is **DENIED** in part and **GRANTED** in part. Emissive's Third-Party Complaint against Parsons is construed as a counterclaim naming Parsons as a defendant to a claim for attorney's fees under 35 U.S.C. § 285. Emissive's tortious interference claim is **DISMISSED**.

**SO ORDERED** this   5th   day of September, 2007.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge